# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT ASHTON,

        Plaintiff

v.

CHARLES T. KNEPP, et al.,

        Defendants

CIVIL ACTION NO. 1:12-CV-01920

(KANE, J.)
(MEHALCHICK, M.J.)

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Robert Ashton is proceeding *pro se* and brings this civil action pursuant to [42 U.S.C. § 1983](#). During relevant times in this action, Ashton was serving his sentence in pre-release capacity in the Wernersville Community Corrections Center ("Wernersville"). Pending before this Court are two Motions to Dismiss. Defendants Corrections Counselor Charles T. Knepp, Bureau Director Traci Jacobson, Center Director Michael Gingerich, Accounting Assistant Kathy Jo Reedy, Wernersville Community Corrections Center, Bureau of Community Corrections[1] ("Bureau"), former Bureau Director Brenda Tritt, current Bureau Director Jack[2] Sommers, and the Pennsylvania Department of Corrections ("DOC") bring a Motion to Dismiss, ([Doc. 77](#)), and Defendants Luzerne County Probation Services ("Luzerne County") and Luzerne County Probation Services Restitution Coordinator Thomas Pepperling

---

[1] Defendants fail to name the Bureau of Community Corrections in their motion to dismiss. However, they discuss the Bureau throughout their brief in support. For the sake of efficiency, the Court will consider whether the Bureau should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

[2] Ashton names Defendant John Sommers, Director of the Bureau of Community Corrections. His correct name is Jack Sommers, and the Court will refer to him by his correct name.

bring a separate Motion to Dismiss. ([Doc. 81](#)). Having been briefed, these motions are ripe for disposition.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On June 28, 2010, Ashton was approved for the DOC Pre-Release Program, and was released to Wernersville, which operates under the DOC and the Bureau policies. ([Doc. 73](#), ¶ 18). Ashton states that while he was at Wernersville, Ashton was working and attending Reading Area Community College ("RACC"). ([Doc. 73](#), ¶¶ 29-32). Ashton's counselor at Wernersville was Defendant Knepp. Ashton states that Knepp denied him the opportunity to attend off-site alcoholics support group meetings ([Doc. 73](#), ¶ 95); denied him sign-in times amenable to his education and work schedule ([Doc. 73](#), ¶ 48); and denied him permission to store a laptop computer in his vehicle. ([Doc. 73](#), ¶ 63). Ashton further alleges that Knepp expected him to perform chores at Wernersville, despite his having been enrolled in RACC and working part-time. ([Doc. 73](#), ¶ 28). Additionally, Ashton states that Knepp told him he needed to find a job ([Doc. 73](#), ¶ 30) and, after Ashton found a job, Knepp told him that the job he found was not acceptable because he was paid in cash. ([Doc. 73](#), ¶ 33). Further, when conducting a search of his car, Knepp confiscated his cell phone and made insulting remarks to him. ([Doc. 73](#), ¶¶ 72-77). Finally, Ashton alleges that Defendant Gingerich, Knepp's supervisor, supported the sign-out decision ([Doc. 73](#), ¶ 51) and the laptop storage decision. ([Doc. 73](#), ¶ 67).

On September 16, 2010, Ashton approached Gingerich to discuss the discriminatory conduct by Knepp and explained to Gingerich that it was creating an undue hardship on Ashton. ([Doc. 73](#), ¶ 64). On September 19, 2010, Ashton sent Gingerich a formal written

request regarding his problems with Knepp. (Doc. 73, ¶ 66). On October 8, 2010, Ashton states that his vehicle was searched by Knepp, Gingerich, and three other staff members. (Doc. 73, ¶ 72). Ashton states that this cell phone, which belonged to his fiancée, was confiscated during the search of his car. (Doc. 73, ¶¶ 73-74). Ashton claims that Defendants accessed this phone to gain personal information regarding Ashton's bank account which he held jointly with his fiancée. (Doc. 73, ¶ 76).

Ashton alleges that he secured a federal loan to finance his educational pursuits. (Doc. 73, ¶ 43). When his phone was searched, Defendants learned that his refund money received from RACC was deposited in the joint bank account, and not his inmate account, which was contrary to an agreement Ashton signed on August 23, 2010. (Doc. 1-1, p. 53, Ex. 51). Subsequently, on October 13, 2010, Ashton gave Reedy a deposit form identified as "RACC Refund Check" in the amount of $3,715.45, which indicated that his refund money was deposited in his inmate account. (Doc. 73, ¶ 59; Doc. 1, Ex. 107). Ashton states that throughout his time at Wernersville, this money was withdrawn from his inmate account beginning in August 2010.

Sometime after October 8, 2010, Ashton alleges that Knepp removed an approved residence form from Ashton's folder, which resulted in Ashton being unable to sign out to his fiancée's apartment. (Doc. 73, ¶¶ 89-90). On November 25, 2010, Ashton escaped from Wernersville. (Doc. 73, ¶ 105). On November 26, 2010, Ashton's inmate account was depleted. (Doc. 73, ¶ 110). Ashton submits that $3,241.44 was deducted from his prisoner account at Wernersville and forwarded to Luzerne County. (Doc. 73, ¶¶ 110-112).

On September 26, 2012, Ashton filed the instant suit, alleging violations under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. (Doc. 1). On February 27, 2013, Ashton filed an amended complaint. (Doc. 73). Pending before this Court are Defendants' motions to dismiss Ashton's amended complaint. (Doc. 77; Doc. 81).

II.    **DISCUSSION**

    A.    STANDARD

Defendants have filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The United States Court of Appeals for the Third Circuit has noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), continuing with our opinion in *Phillips [v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1955, 173 L. Ed. 2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when

deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly, 550 U.S. at 555*. In keeping with the principles of *Twombly*, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal

5

conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

*Fowler*, 578 F.3d at 210-11.

These heightened pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. *Hakeem v. Fisher*, 2010 WL 5463325, at *5 (M.D. Pa. Dec. 1, 2010) *report and recommendation adopted*, 2010 WL 5463134 (M.D. Pa. Dec. 29, 2010). Additionally, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

B.  CLAIMS AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES

Ashton alleges claims against Defendants Knepp, Gingerich, Jacobson, Reedy, Tritt, Sommers, and Pepperling in both their individual and official capacities. Additionally, Ashton alleges claims against Wernersville, the Bureau, the Department of Corrections, and Luzerne County.

The Eleventh Amendment applies to claims asserted in federal court under 42 U.S.C. § 1983 and prohibits suits brought in federal court against a state or where the state or its agency is the real party in interest. Pennhurst State Schools and Hospital v. Halderman, 465 U.S. 89 (1984); Allegheny County Sanitary Authority v. United States Environmental Protection Agency, 732 F.2d 1167 (3d Cir. 1984). Additionally, to the extent that the complaint seeks

monetary damages, the defendants are immune under the Eleventh Amendment in their official capacities. *See* Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989); Howlett v. Rose, 496 U.S. 356, 365 (1990).

Furthermore, Pennsylvania courts are part of the "Commonwealth government," which makes them state agencies. 42 Pa.C.S. § 102 (2008); 42 Pa.C.S. § 301 (2008). Pennsylvania's judicial districts, including their probation and parole departments, are ordinarily entitled to Eleventh Amendment immunity as arms of the State. *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 201 (3d Cir. 2008) (citing *Benn v. First Judicial Dist. of Pa,* 426 F.3d 233, 241 (3d Cir. 2005)).

Accordingly, Ashton's claims against Defendants Knepp, Gingerich, Jacobson, Reedy, Tritt, Sommers, and Pepperling in their official capacities seeking monetary relief, are barred by the Eleventh Amendment and subject to dismissal. Additionally, all claims against the DOC, Bureau, Wernersville, and Luzerne County are barred by the Eleventh Amendment.[3] Therefore, it is recommended that claims against Defendants in their official capacities and claims against the DOC, Bureau, Wernersville, and Luzerne County be dismissed with prejudice.

C. SECTION 1983 CONSPIRACY CLAIMS.

Throughout the complaint, Ashton alleges that Defendants conspired in their actions against him. To sustain a conspiracy claim under § 1983, a plaintiff must establish that: (1) Defendants deprived him of a right secured by the Constitution or laws of the United States;

---

[3] Defendants do not move to dismiss the Bureau; however, the Court recommends dismissal based on 28 U.S.C. § 1915(e)(2)(B)(ii).

and (2) conspired to do so while acting under color of state law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970); *Marchese v. Umstead,* 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000). Additionally, to "sufficiently allege a conspiracy, a plaintiff must show a 'combination of two or more person[s] to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose.'" *Marchese,* 110 F. Supp. 2d at 371 (quoting *Panayotides v. Rabenold,* 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999) (internal citations omitted)). A plaintiff must make "specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events." *Marchese,* 110 F. Supp. 2d at 371 (quoting *Panayotides v. Rabenold,* 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999) (internal citations omitted)).

With regard to Ashton's allegations of conspiracy claims, the Court finds that there are no allegations in the complaint to support a plan or agreement of the defendants to conspire or engage in a corrupt plot to violate Ashton's civil rights. The only information Ashton presents in support of any conspiracy is a statement in a letter dated December 16, 2010, from Reedy to Pepperling stating: "As per our discussion on 12/16/2010, enclosed you will find check #4091 in the amount of $3,241.44 that should be applied to the court costs and fines [. . .]." (Doc. 1, Ex. 120). This letter indicates that money was transferred from Ashton's inmate account, as alleged in his complaint. Ashton presents no facts of any plan or agreement by defendants to engage in a violation of Ashton's civil rights. *See Young v. Kann,* 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (finding that conspiracy claims which are based upon *pro se* plaintiff's subjective suspicions and unsupported speculation properly dismissed under § 1915(d)); *see also Brown v.*

8

*Hannah*, 850 F. Supp. 2d 471, 481 (M.D. Pa. 2012). Therefore, it is recommended that the Court dismiss Ashton's conspiracy claims with prejudice.

### D. CLAIMS AGAINST DEFENDANTS TRITT, SOMMERS, GINGERICH, AND JACOBSON IN THEIR SUPERVISORY ROLES

To state a claim under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *Morse v. Lower Merion School District*, 132 F.3d 902, 907 (3d Cir. 1997). An allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to § 1983 liability. *Padilla v. Beard*, 2006 WL 1410079, at *3 (M.D. Pa. May 18, 2006). *See also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir. 1985) (per curiam) (a mere linkage in the prison chain of command is not sufficient to demonstrate personal involvement for purposes of section 1983). Thus, "it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." *Padilla*, 2006 WL 1410079, at *3 (citing *Greenwaldt v. Coughlin,* 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995) (citations omitted)).

Ashton brings failure to supervise and failure to act claims against Sommers, Tritt, Gingerich and Jacobson in their roles as supervisors. However, these defendants do not have sufficient personal involvement in Ashton's alleged constitutional claims for these claims to proceed. Even if the court were to allow Ashton to amend this complaint with regard to these defendants, to the extent that their involvement is based on failure to supervise or intervene, the court finds that amendment would be futile. *See Shane v. Fauver,* 213 F.3d 113, 115 (3d Cir.

2000). Therefore, it is recommended that the Court dismiss with prejudice Ashton's claims against Defendants Tritt, Sommers, Gingerich, and Jacobson to the extent that Ashton alleges they have failed to supervise or act.

E. FIRST AMENDMENT RETALIATION CLAIMS AGAINST KNEPP AND GINGERICH

Ashton alleges two separate First Amendment claims – one titled "First Amendment" (Doc. 73, ¶¶ 159-160) and a second titled "Retaliation for Exercise of Federally Protected Right" (Doc. 73, ¶¶ 187-189). Both claims allege retaliation in violation of Ashton's First Amendment rights. Specifically, Ashton alleges that he faced retaliatory conduct by Defendants Knepp and Gingerich after he filed a reported against Knepp for denying him sign-out times for employment, denying him access to his education, and denying him leave to attend alcohol treatment meetings (Doc. 73, ¶¶ 159-160), and then reported Knepp's actions to Knepp's supervisor, Gingerich. (Doc. 73, ¶ 160).

A prisoner alleging retaliation in violation of the Constitution must satisfy three elements: (1) that he engaged in a constitutionally protected activity, *Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir. 2001); (2) that he suffered some adverse action at the hands of prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, *Allah v. Seiverling,* 229 F.3d 220, 225 (3d Cir. 2000) (citing *Suppan v. Dadonna,* 203 F.3d 228, 235 (3d Cir. 2000)); and (3) that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to" take the adverse action against him. *Rauser,* 241 F.3d at 333 (quoting *Mount Healthy Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977)). If a plaintiff establishes a prima facie case of retaliation, the burden then shifts to the prison officials to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if the plaintiff

were not engaging in the constitutionally protected activities. *Rauser,* 241 F.3d at 334 ("Once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.").

As to the first prong, the filing of a grievance or a lawsuit falls within the ambit of the First Amendment. *See Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003); *Hagan v. Chambers,* 2010 WL 4812973, at *16 (M.D. Pa. Nov. 19, 2010). In this case, Ashton alleges he received retaliatory treatment because he reported Knepp's conduct to Knepp's supervisor, Gingerich, and filed a formal complaint against Knepp. Ashton alleges that after he submitted a report to Gingerich, he faced retaliation by both Knepp and Gingerich. Thus, Ashton has satisfied the first prong.

To meet the second prong of *Rauser,* Ashton must show that there was an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Rauser,* 241 F.3d at 333. Ashton does not allege that he stopped exercising his First Amendment rights, namely filing reports or grievances because of adverse action taken by Defendants. Further, while Ashton's complaint alleges that he received retaliatory treatment, he fails to connect how this treatment affected his rights. *See Dickson v. McGrady,* 2010 WL 1330082, at *6 (M.D. Pa. Mar. 30, 2010) (plaintiff failed to meet second prong because he was not deterred from exercising his First Amendment rights by any alleged adverse actions taken by Defendants because he continued with his complaints that then resulted in more retaliation). Ashton alleges that Defendants searched his car and confiscated his cell phone. (Doc. 73, ¶

165). Ashton also alleges that Knepp removed an approved residence form from Ashton's folder which resulted in Ashton not being permitted to visit his fiancée. (Doc. 73, ¶¶ 89-90). Additionally, Knepp did not allow Ashton a home pass to celebrate the Thanksgiving holiday with his family. (Doc. 73, ¶ 100). "It is generally a question of fact whether a retaliatory campaign of harassment has reached the threshold of actionability under § 1983." *Thomas v. Independence Township*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Suppan v. Dadonna,* 203 F.3d 228, 233 (3d Cir. 2000)). Ashton has reached that threshold, and has pled facts sufficient to meet prong two.

Finally, Ashton must state a claim that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to" take the adverse action against him. *Rauser,* 241 F.3d at 333. Ashton has alleged that he was retaliated against because he reported his counselor's alleged misconduct to the counselor's supervisor. (*See* Doc. 96-1, p. 8). As such, his complaint does state a claim that his protected conduct (i.e. reporting the misconduct) resulted in retaliation. Ashton's complaint meets this final prong required for a complaint to state a claim for retaliation. Accordingly, it is recommended that Defendants' Motion to Dismiss be denied as to this claim.

F. FOURTH AMENDMENT CLAIM AGAINST KNEPP, GINGERICH, REEDY, JACOBSON, AND WERNERSVILLE

Ashton alleges that Knepp and Gingerich searched his car, confiscated his Samsung cell phone (estimated at $200.00 in value), and searched information on his cell phone in violation of his Fourth Amendment right to be free from unreasonable searches. (Doc. 73, ¶ 165-166). Additionally, Ashton alleges that Knepp and Gingerich forced him to provide them with his security password so that they could access data on his cell phone, and that they then viewed

Ashton's private photos, call logs, text messages, e-mails, and information related to transactions on a bank account he shared with his fiancée. (Doc. 73, ¶ 166). Specifically, Defendants learned that Ashton obtained a federal loan under the Higher Education Act ("HEA") and a Federal Pell Grant for student assistance and that a refund check generated from these loans was deposited into the shared bank account. (Doc. 73, ¶ 167). Ashton alleges upon learning this information, Reedy and Jacobson forced Ashton to transfer the funds into his inmate account, where the money was then subjected to deductions pursuant to Act 84.[4] (Doc. 73, ¶¶ 134, 167).

### a. Search of Car and Cellphone

An inmate's rights under the Fourth Amendment are subject to curtailment and does not protect an inmate from the search of his property. *Hudson v. Palmer*, 468 U.S. 517, 528 (1984). The protections of the Fourth Amendment with respect to seizures of a prisoner's "effects" or property do not apply in the prison context. *Heim v. Dauphin County Prison*, 2011 WL 3875998, at *3 (M.D. Pa. Aug. 31, 2011); *see also Doe v. Delie,* 257 F.3d 309, 316 (3d Cir. 2001) ("The *Hudson* court confirmed that a Fourth Amendment right to be free from unreasonable searches and seizures is inconsistent with incarceration."). The pre-release program is subject to the rules

---

[4] 42 Pa.C.S. § 9728(b)(5), commonly known as "Act 84" states, in pertinent part, as follows:

> The county correctional facility to which the offender has been sentenced or the Department of Corrections shall be authorized to make monetary deductions from inmate personal accounts for the purpose of collecting restitution or any other court-ordered obligation […]. The Department of Corrections shall develop guidelines relating to its responsibilities under this paragraph.

of the Department of Corrections and Bureau. 18 U.S.C. § 3624(c)(4) ("Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621 [18 U.S.C. § 3621, Imprisonment of a convicted person]"). As such, even though he was in a pre-release program, Ashton was still subject to the rules and regulations of an inmate, and is not protected under the Fourth Amendment with respect to searches or seizures of his personal effects or property such as his cell phone and car. Accordingly, Ashton does not have a cognizable claim against Defendants for violating his Fourth Amendment rights in connection with the search of his car and confiscation of his cell phone. *Heim v. Dauphin County Prison*, 2011 WL 3875998, at *3 (M.D. Pa. Aug. 31, 2011) (dismissing Fourth Amendment claim because inmate's cell phone was confiscated). For these reasons, it is recommended that Ashton's Fourth Amendment claim be dismissed with prejudice for failure to state a claim upon which relief can be granted.

### b. Seizure of the Award Funds

Ashton alleges that Defendants Reedy and Jacobson, upon learning that Ashton's award funds were in his personal bank account, forced him to transfer those award funds to his inmate account. (Doc. 73, ¶ 167). Ashton further alleges that Defendants then converted his funds and sent them to Defendants Pepperling and Luzerne County in violation of his Fourth Amendment rights. (Doc. 73, ¶ 167). As with the search and seizure of his vehicle and cell phone, Ashton's rights under the Fourth Amendment are curtailed because he is an inmate, and because the Fourth Amendment does not protect an inmate from the seizure of his property. *See Hudson v. Palmer*, 468 U.S. 517, 528 n.8 (1984). As such, the Court finds that Ashton's claims regarding the transfer of funds to his inmate account and the deduction of funds from his

14

inmate account are not cognizable under the Fourth Amendment, and recommends the dismissal of these claims with prejudice.

### G. Claims Related to Plaintiff's Funds Being Depleted

Ashton alleges several violations related to his refund check from Reading Area Community College. Ashton argues that the money he received from his refund check cannot be applied to any of his outstanding criminal fines and court costs, or deducted from his account pursuant to 42 Pa.C.S.A. § 9728(b), commonly known as Act 84. Ashton submits that no deductions should have been taken from the amount attributable to his refund check for any Act 84 purposes. (Doc. 73, ¶ 59-60). Specifically, he alleges violations of his Due Process rights; violations under the Higher Education Act; violations under the Civil Rights Act; enforcement of unconstitutional polices or customs against Ashton when they deducted money from his inmate account; that Defendants failed to adequately train or supervise employees with regard to these violations; that there were inadequate hiring practices; and various state law claims including violations of the Pennsylvania Constitution, violations under the Pennsylvania Human Relations Act, intentional infliction of emotional distress, and defamation. (*See* Doc. 73, ¶¶ 176-177, 207-244).

#### a. Due Process Claim

Ashton alleges that his Fourteenth Amendment due process rights were violated when he did not receive a pre-deprivation notice or hearing, or a post-deprivation hearing following the conversion of his award funds and depletion of his inmate account. (Doc. 73, ¶ 176).

The Fourteenth Amendment forbids state actors from depriving persons of life, liberty or property without due process of law. U.S. Const. amend. XIV, § 1; *see also Elmore v. Cleary,* 399

F.3d 279, 282 (3d Cir. 2005). To state a claim for procedural due process, an inmate must allege "(1) that the state deprived him of a protected interest in life, liberty, or property and (2) that the deprivation occurred without due process of law." *Burns v. PA Dept. of Corrections*, 544 F.3d 279, 285 (3d Cir. 2008). The Third Circuit Court of Appeals has recognized that inmates have a property interest in funds held in their prison accounts. *Burns*, 544 F.3d at 286 (citing *Reynolds v. Wagner,* 128 F.3d 166, 179 (3d Cir. 1997)). Because a prisoner has a property interest in his prison account, due process is required prior to making Act 84 deductions from an inmate's account. *Tillman v. Lebanon County Correctional Facility,* 221 F.3d 410, 421 (3d Cir. 2000). Pennsylvania courts have held that an inmate receives necessary pre-deprivation process needed to deduct under Act 84 at the inmate's sentencing hearing. *Buck v. Beard*, 583 Pa. 431, 437-38, 879 A.2d 157, 161 (2005); *see also Richardson v. Pa. Dept. of Corrections*, 991 A.2d 394, 396 (Pa. Commw. Ct. 2010) (a "sentencing hearing provides all the process required before deductions are made from an inmate account"). Additionally, this Court has determined that the Department of Corrections' grievance procedure satisfies due process by providing an adequate post-deprivation remedy. *Montanez v. Beard*, 2012 WL 6917775, at *18 (M.D. Pa. Aug. 10, 2012) *report and recommendation adopted,* 2013 WL 231064 (M.D. Pa. Jan. 22, 2013).

Further, the Pennsylvania legislature "has not provided an exception for gifts placed in an inmate's personal account, and it does not require the Department to account for the source of all funds in an inmate's personal account before making deductions. The personal account of an inmate may be derived from various sources, including wages, gifts and government benefits. The source of funds is of no moment." *Danysh v. Dept. of Corrections*, 845 A.2d 260, 263 (Pa. Commw. Ct. 2004) *aff'd,* 584 Pa. 122, 881 A.2d 1263 (2005).

In this case, Ashton states that his procedural due process rights were violated when money was deducted from his account without proper notice and a hearing. First, Ashton states that he was denied due process when money was deducted from his inmate account on August 11, 2010, pursuant to Act 84. (Doc. 73, ¶¶ 35-37). Next, Ashton states he was forced to transfer money he received from his RACC refund check from his joint bank account with his fiancée to his inmate account. Additionally, Ashton states that Reedy and Jacobson violated his due process rights when they deducted money from his account after he escaped from Wernersville; Defendants argue that Ashton abandoned his property and thus no process was due. (Doc. 85, p. 21). On January 19, 2011, Ashton filed a grievance with SCI – Camp Hill and received a response indicating that he must file a grievance at Wernersville regarding his claims at Wernersville. (Doc. 1-2, p. 49, Ex. 125). The grievance response included the forms required for filing a grievance at Wernersville. (Doc. 1-2, p. 49, Ex. 125). There is no indication that Ashton filed a grievance at Wernersville or exercised any of his due process remedies through the post-deprivation grievance procedure.

It appears that Ashton was afforded proper due process safeguards through the post-deprivation grievance procedure available to him. (Doc. 73, ¶¶ 116-118). Thus, to the extent Ashton argues that his due process rights were violated when money was deducted from his inmate account, Ashton has failed to state a claim upon which relief may be granted. Therefore, it is recommended that Ashton's procedural due process claim be dismissed with prejudice.

b.  Higher Education Act

Ashton states that by using the balance of his inmate account to pay off state court fines and debts, Defendants violated the Higher Education Act. *See* 20 U.S.C. § 1070. Ashton

contends that Defendants deprived him of money derived from HEA award funds, in violation of 20 U.S.C. § 1095a(d).

In support of his claim under the HEA, Ashton relies on *Higgins v. Beyer,* 293 F.3d 683 (3d Cir. 2002), in which the Court of Appeals for the Third Circuit held that a state statute providing for collection of court fines from an inmate's account was void to the extent that it allowed prison officials to deduct funds derived from the inmate's veterans' disability benefits. The Third Circuit held that a federal statute, prohibiting attachment, levy, or seizure of a veteran's disability benefits, provided a federal right that was enforceable under § 1983.

In order to state a claim under § 1983, a plaintiff must allege a "violation of a federal right, and not merely a violation of federal law." *Pa. Pharmacists Ass'n v. Houstoun,* 283 F.3d 531, 535 (3d Cir. 2002) (en banc) (quotation omitted). The Third Circuit explained that "a plaintiff alleging a violation of a federal statute may not proceed under § 1983 unless 1) the statute creates enforceable rights, privileges, or immunities within the meaning of § 1983 and 2) Congress has not foreclosed such enforcement of the statute in the enactment itself." *Nextel Partners Inc. v. Kingston Township,* 286 F.3d 687, 694 (3d Cir. 2002) (internal quotations omitted). "A plaintiff asserting a statutory claim under § 1983 has the initial burden of demonstrating that the statute creates a substantive right." *Nextel,* 286 F.3d at 694. A federal statute creates a substantive right if it satisfies the following three conditions:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

> *Higgins,* 293 F.3d at 689 (quoting *Blessing v. Freestone,* 520 U.S. 329, 340-41 (1997)).

18

Once all three conditions are met, a rebuttable presumption arises that the right is enforceable under § 1983. *Houstoun*, 283 F.3d at 535. "This presumption may be rebutted by showing that Congress expressly or impliedly foreclosed an action under § 1983." *Houstoun*, 283 F.3d at 535; *see also Higgins*, 293 F.3d at 689.

In this case, Ashton states that deducting money from his inmate account, traceable to an award for higher education, violated his rights pursuant to 20 U.S.C. § 1095a(d). The HEA provides loans to students for purposes of assisting them with higher education. Specifically, it states:

> [N]otwithstanding any other provision of Federal or State law, no grant, loan, or work assistance awarded under this subchapter and part C of subchapter I of chapter 34 of Title 42, or property traceable to such assistance, shall be subject to garnishment or attachment in order to satisfy any debt owed by the student awarded such assistance, other than a debt owed to the Secretary and arising under this subchapter and part C of subchapter I of chapter 34 of Title 42.

20 U.S.C. § 1095a(d).

The Third Circuit has yet to determine whether prison officials can attach or seize funds in an inmate's account traceable to a grant for higher education under the HEA. Ashton argues that the provisions set forth in 42 Pa.C.S.A. 9728(b) are preempted by 20 U.S.C. § 1095a(d). The Defendants do not discuss whether this federal statute preempts Act 84. As such, the Court finds that at this juncture in the litigation, Ashton has pled facts sufficient to state a claim that his rights were violated under the HEA because an identifiable and traceable amount of his award money was used to pay off his court debts. Thus, it is recommended that Defendants' Motions to Dismiss be denied as to this claim.

c.  <u>Civil Rights Act</u>

Ashton states that Defendants Knepp, Gingerich, Reedy, and Jacobson violated the Civil Rights Act pursuant to 42 U.S.C. §§ 2000d-7, but fails to provide any additional information as to how this claim violates 42 U.S.C. §§ 2000d-7. (*See* Doc. 73, ¶ 216). Ashton points to no language in the statute that may have been violated, nor does he provide any facts as to how his rights were infringed under this statute. The language of 42 U.S.C. § 2000d states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The "Civil rights remedies equalization" subpart, § 2000d-7, elaborates on remedies and Eleventh amendment immunity. There are no facts in Ashton's Amended Complaint that could be reasonably construed to fall within this statute. As such, Ashton has failed to allege any facts as to how Defendants violated the Civil Rights Act and it is recommended that this claim be dismissed with prejudice.

### d. Municipal Liability Claims

Ashton alleges that Defendants enforced unconstitutional polices or customs; that supervisory Defendants failed to train other Defendants; and that Defendants engaged in inadequate hiring practices.

### i. Unconstitutional Polices or Customs

Whether a municipal entity may be held liable under § 1983 is governed by *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). In *Monell*, the Supreme Court held that liability against such an entity may not be established by the *respondeat superior* doctrine, but instead must be founded upon evidence indicating the government itself supported

a violation of the plaintiff's constitutional rights. *Monell*, 436 U.S. at 694; *see also Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (municipal liability attaches only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury") (quoting *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978)).

Proving a government policy or custom can be accomplished in a number of different ways. *Bielevicz*, 915 F.2d at 850. "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). Custom, in contrast, can be proven by demonstrating that a given course of conduct, although not specifically endorsed or authorized by state or local law, is so well-settled and permanent as to virtually constitute law. *Andrews*, 895 F.2d at 1480.

In this case, Ashton has failed to allege that any of the defendants are policymakers or had final policy making authority. *See Santiago v. Warminster Township*, 629 F.3d 121, 135 n.11 (3d Cir. 2010). The removal of money from prisoner trust accounts is controlled by Pennsylvania state law. *See* 42 Pa.C.S. § 9728(b)(5). Courts are forbidden from "assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." *Santiago*, 629 F.3d at 135 n.11 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988)). Additionally, there are no allegations of a custom, policy or practice that resulted in Ashton's alleged constitutional violations. Thus, it appears that Ashton's claims based on unconstitutional practices is based on Pennsylvania state law Act 84. As such, Plaintiff has

21

failed to state a claim against Defendants and it is recommended that this claim be dismissed with prejudice.

ii.   <u>Failure to Train and Supervise/Inadequate Hiring</u>

"A plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). A plaintiff must also demonstrate that through its deliberate conduct, the entity was the "moving force" behind the injury alleged. *Reitz*, 125 F.3d at 145 (citing *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 400 (1997)). A claim for relief based on an alleged failure to train or deficient polices regarding hiring cannot be sustained without averring any factual allegations that the supervising entity was deliberately indifferent to the risk of harm to the plaintiff. *Aruanno v. Booker*, 384 Fed. Appx. 69, 70 (3d Cir. 2010).

Ashton's amended complaint fails to provide any factual allegations that show that Defendants were deliberately indifferent to any alleged harm to Ashton. Ashton's failure to train and inadequate hiring claims are based on the fact that Defendants, despite knowing that the funds originated from an HEA grant, still took deductions from Ashton's inmate account pursuant to Act 84. Again, the basis of Ashton's failure to train claim is based on his assertion that Act 84 is unconstitutional. Thus, it is recommended that Plaintiff's failure to train and inadequate hiring claims be dismissed with prejudice.

### H. Fifth and Fourteenth Amendment Claims against Knepp, Gingerich, Reedy, Jacobson, and Wernersville

Ashton alleges a Fifth Amendment claim and a Fourteenth Amendment Equal Protection claim against Defendants Knepp, Gingerich, Reedy, Jacobson, and Wernersville.[5] Specifically, Ashton alleges that he was held to a more stringent, modified program standard than others in violation of his right to Equal Protection. (Doc. 73, ¶ 176).

#### 1. Fifth Amendment Claim

The due process clause of the Fifth Amendment does not apply to state officials. *Caldwell v. Beard*, 324 Fed. Appx. 186, 189 (3d Cir. 2011) (Fifth Amendment applies only where federal action is the subject of the alleged due process violation). Accordingly, it is recommended that Ashton's Fifth Amendment claims be dismissed with prejudice.

#### 2. Fourteenth Amendment Equal Protection Claim

Ashton alleges that he was held to a more stringent standard than other similarly-situated residents in the pre-release program. The Equal Protection Clause of the Fourteenth Amendment requires all persons "similarly situated" to be treated alike. *See City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439 (1985); *Millard v. Hufford,* 415 Fed. Appx. 348, 349 (3d Cir. 2011). A petitioner who alleges an equal protection violation has the burden of proving the existence of purposeful discrimination that had a discriminatory effect on him. *See McCleskey v. Kemp,* 481 U.S. 279, 292 (1987). Accordingly, to state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show

---

[5] As noted previously, it is recommended that Wernersville be dismissed from this action based on Eleventh Amendment immunity.

that: (1) he was a member of a protected class; (2) he was treated differently from similarly situated persons outside of his protected class; and (3) the discrimination was purposeful or intentional rather than incidental. *Heim v. Dauphin County Prison*, 2011 WL 3875998, at *6 (M.D. Pa. Aug. 31, 2011).

Additionally, the Third Circuit has recognized "class of one" claims where a plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Allegations of irrational and wholly arbitrary treatment, even without allegations of improper subjective motive, are sufficient to state a claim for relief under the equal protection analysis. *Phillips v. County of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000)). The Third Circuit noted that *Olech* did not establish a requirement that a plaintiff identify in the complaint specific instances where others had been treated differently for the purposes of equal protection. *Phillips*, 515 F.3d at 245.

The Court liberally construes Ashton's claim for equal protection as asserting a "class of one" theory, rather than a "protected class" theory, as neither prisoners nor indigents constitute a suspect class. *See Abdul–Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001). Ashton alleges several facts that he was intentionally treated differently than other similarly situated inmates in the pre-release program. Ashton submits that "others" were allowed more privileges. Specifically, Ashton alleges that he was refused the opportunity to be paid in cash, and also denied a pass for Thanksgiving. Ashton has not provided specific names of other pre-release residents similarly situated to him; however, Ashton has alleged specific instances where he was explicitly treated differently than other pre-release residents. As such,, under the low pleading

24

standards established in *Philips*, dismissal would be premature at this stage. *See Philips,* 515 F.3d at 245 (dismissal at the motion to dismiss stage was premature even though the class-of-one equal protection claim was inadequately pleaded). Therefore, it is recommended that Defendants' Motion to Dismiss Plaintiff's equal protection claim be denied.

I. Eighth Amendment Claim against Knepp, Gingerich, Reedy, Jacobson, Wernersville, Pepperling & Luzerne County

Under the Eighth Amendment, the state is obligated to provide sentenced prisoners with adequate shelter, food, sanitation, medical care and personal safety. *Rhodes v. Chapman,* 452 U.S. 337, 348 (1981); *Tillery v. Owens,* 719 F. Supp. 1256, 1269 (W.D. Pa. 1989) *aff'd,* 907 F.2d 418 (3d Cir. 1990). Ashton submits that Wernersville did not provide drug/alcohol evaluations, medical care, food, or clothing, and that he relied on being able to sign-out to obtain his own food and necessities. (Doc. 96, p. 19). Ashton further alleges that at various times throughout his residency at Wernersville, he was not permitted to sign-out to obtain food or attend addictions treatment meetings, and thus he was dependent on Defendants' willingness to allow him to sign-out of the facility to obtain food and other necessities.

Ashton alleges that Knepp and Gingerich violated his Eighth Amendment rights by preventing him from obtaining food and sleep, preventing him from going to his alcohol treatment meetings, and denying him furloughs (Doc. 73, ¶ 182); that Reedy deprived Ashton of access to his inmate account and denied him funds for clothing and automobile maintenance (Doc. 73, ¶ 182); and that Jacobson and Wernersville abused their authority in the supervision

of Knepp, Gingerich, and Reedy.[6] Ashton submits that these actions created an atypical and significant hardship on Ashton throughout his time as a resident at Wernersville. (Doc. 73, ¶ 182). Ashton further alleges that Pepperling, Luzerne County, and Reedy caused injury to Ashton by enforcing excessive fines and court costs while he was a resident at Wernersville. (Doc. 73, ¶ 183).

Viewing the facts in the light most favorable to plaintiff, the Court finds that plaintiff has alleged facts sufficient to state a claim under the Eighth Amendment since he states the sign-out procedure was his only means to obtain food. Accordingly, it is recommended that Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claim be denied as to Defendants Knepp, Gingerich, and Reedy.

J. AMERICANS WITH DISABILITIES ACT AND REHABILITATION ACT CLAIMS AGAINST KNEPP, GINGERICH, AND JACOBSON

Ashton alleges that, at all relevant times, he was an individual with a disability, namely, alcoholism. (Doc. 73, ¶ 197). Ashton states that Knepp and Gingerich discriminated against him due to his disability and would not allow him to go to offsite alcoholic treatment meetings in violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). (Doc. 73, ¶ 199). Ashton further alleges that Jacobson, as supervisor, should have known of the discriminatory and retaliatory acts by Knepp and Gingerich. (Doc. 73, ¶ 200).

To establish a violation of Title II of the ADA, an inmate must allege that: (1) he is a qualified individual with a disability; (2) he was either excluded from participating in, or denied

---

[6] It has already been recommended that claims against Wernersville and Jacobson, in their supervisory roles, be dismissed with prejudice.

the benefit of, a public entity's services, programs or activities; and that (3) such exclusion, denial of benefits, or discrimination was by reason of disability. *See* 42 U.S.C. § 12132; *Maresca v. Blue Ridge Communications,* 363 Fed. Appx. 882, 884 (3d Cir. 2010); *see also George v. Pennsylvania Dept. of Corrections.*, 2010 WL 936778, at *8 (M.D. Pa. Mar. 11, 2010). Relief under Title II of the ADA, 42 U.S.C. § 12131, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, requires a plaintiff to show that he has an impairment that substantially limits at least one major life activity. *Zhai v. Cedar Grove Municipality*, 183 Fed. Appx. 253, 255 (3d Cir. 2006). The ADA and the Rehabilitation Act describe a disability as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." *County of Centre*, 242 F.3d 437, 447 (3d Cir. 2001).

To prove disability, a plaintiff must show that the limitation on the major life activity is substantial. 42 U.S.C. § 12102(1); *Toyota Motor Mfg. v. Williams,* 534 U.S. 184, 195 (2002) (overruled on other grounds by the ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 353 (2008)). To be substantially limited in a major life activity, "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily live. The impairment must also be permanent or long-term." *Toyota Motor Mfg.,* 534 U.S. at 198. Disability must be assessed on a case-by-case basis, as it is an individualized inquiry. *George v. Pennsylvania Dept. of Corrections.*, 2010 WL 936778, at *8 (M.D. Pa. Mar. 11, 2010) (citing *Toyota Motor Mfg.,* 534 U.S. at 198).

Here, Ashton has not sufficiently alleged that he suffers from a disability that substantially limits one or more of his major life functions and activities, and therefore he has not sufficiently alleged that he falls under the ADA or RA definition of "disabled." As such, it

is recommended that the Court dismiss Ashton's ADA and RA claims because he has not alleged facts sufficient to state a cognizable cause of action under the ADA or RA, but that he be afforded the opportunity to amend his complaint to set forth sufficient facts to assert a prima facie case under the ADA or RA.

K. CREDIT FOR TIME CLAIM AGAINST DOC

When a prisoner "is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Bullock v. Fisher*, 2010 WL 5356493, at *1 (M.D. Pa. Sept. 15, 2010) *report and recommendation adopted,* 2010 WL 5336131 (M.D. Pa. Dec. 21, 2010) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)).

In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court announced that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," the plaintiff must, as a threshold matter, show that there has been a favorable termination of his prior proceedings by demonstrating that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Royal v. Durison*, 254 Fed. Appx. 163, 165 (3d Cir. 2007) (quoting *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994)). A § 1983 claim filed by a state prisoner is barred, regardless of the target of the lawsuit, if success in the § 1983 action "would necessarily

demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson,* 544 U.S. 74, 82 (2005); *Royal v. Durison,* 254 Fed. Appx. 163, 165 (3d Cir. 2007).

In this case, Ashton seeks credit for the time he spent when he was released on unsecured bail on his escape charge. Ashton does not allege that his prior proceedings were favorably terminated; rather, the basis of Ashton's claim is that the terms of his sentence were miscalculated when he escaped from Wernersville. Because Ashton is not alleging any form of favorable termination, as required by *Heck*, it is recommended that Ashton's § 1983 claim be dismissed with prejudice.

L. STATE LAW CLAIMS

Pursuant to 42 U.S.C. § 1367, this Court has supplemental jurisdiction over the myriad of state law claims Ashton brought. As such, these claims are examined below.

**1. Anti-Discrimination Clause of the Pennsylvania Constitution**

Ashton states that all Defendants took part in the conspiracy to execute retaliatory conduct and a campaign of harassment in violation of the Pennsylvania Constitution, Art. 1 § 26, which states that "[n] either the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." (Doc. 73, ¶ 244). As discussed above, Ashton has failed to allege facts sufficient to establish a conspiracy. As such, it is recommended that this claim be dismissed with prejudice.

**2. Pennsylvania Human Relations Act (PHRA)**

Ashton does not allege facts specific to the PHRA. Rather, Ashton reiterates that his funds were seized in violation of the PHRA. (*See* Doc. 73, ¶¶ 240-242). PHRA claims are

analyzed in accordance with the ADA where such claims overlap. *Cullison v. Dauphin County*, 2012 WL 3027776, at *11, n.16 (M.D. Pa. May 18, 2012) (citing *Kelly v. Drexel University*, 94 F.3d 102, 105 (3d Cir. 1996)). Thus, it is recommended that Ashton's PHRA claim be dismissed under the analysis outlined in the ADA Section, above.

### 3. Intentional Infliction of Emotional Distress

Pennsylvania courts recognize a tort for intentional infliction of emotional distress. *See, e.g., Bartanus v. Lis,* 332 Pa. Super. 48, 59, 480 A.2d 1178, 1184 (1984). To recover for intentional infliction of emotional distress, a plaintiff must show: (1) extreme and outrageous conduct; (2) which was either intentional or reckless; and (3) which caused severe emotional distress. *Wisniewski v. Johns-Manville Corp.,* 812 F.2d 81, 85 (3d Cir. 1987). Outrageous conduct is that which goes beyond all possible bounds of decency, so as to be regarded as atrocious and utterly intolerable in a civilized community. *Wisniewski*, 812 F.2d at 85.

Ashton does not allege conduct that would rise to the level required under Pennsylvania law for "extreme and outrageous" conduct. His emotional distress claims appear to be premised on the deduction of funds. Nor has Ashton alleged any facts to support his claim that he suffered emotional distress as a result of any of Defendants' conduct. Thus, it is recommended that this claim be dismissed with prejudice.

### 4. Defamation

To establish a defamation claim under Pennsylvania law, a plaintiff must allege the following elements: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) an understanding by the reader or listener of its defamatory meaning; (5) an understanding by the reader or listener of an intent by the

defendant that the statement refers to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged position. 42 Pa.C.S. § 8343(a); *see Breslin v. Dickinson Twp.*, 2010 WL 3293337 (M.D. Pa. Aug. 19, 2010). The court must determine as a matter of law whether a particular communication is capable of a defamatory meaning. *See U.S. Healthcare v. Blue Cross of Greater Phila.,* 898 F.2d 914, 923 (3d Cir. 1990); *12th St. Gym, Inc. v. Gen. Star Indem. Co.,* 93 F.3d 1158, 1163 (3d Cir. 1996). "A communication is considered defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *See Goralski v. Pizzimenti,* 115 Pa. Commw. 210, 214, 540 A.2d 595, 597-98 (1988). Words that are merely annoying, embarrassing, or uncouth do not qualify as defamatory. *See Beverly Enterprises, Inc.. v. Trump,* 182 F.3d 183, 187 (3d Cir. 1999). "A certain amount of vulgar name-calling is frequently resorted to by angry people without any real intent to make a defamatory assertion, and it is properly understood by reasonable listeners to amount to nothing more. This is true particularly when it is obvious that the speaker has lost his temper and is merely giving vent to insult." *Beverly Enterprises,* 182 F.3d at 188 (quoting Restatement (Second) of Torts § 566 cmt. e (1977)).

The determinative factor in this analysis is the "way in which the communication would have been interpreted by the reasonable, average person in its intended audience." *Purcell v. Ewing*, 560 F. Supp. 2d 337, 341 (M.D. Pa. 2008) (quoting *Karl v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 78 F. Supp. 2d 393, 397 (E.D. Pa. 1999)). Hence, a defamation plaintiff may not recover for a flippant or abrasive remark if it would not affect the plaintiff's reputation "in the minds of average persons among whom it is intended to circulate." *Maier v. Maretti,* 448 Pa.

Super. 276, 671 A.2d 701, 704 (1995); *accord Tucker v. Fischbein,* 237 F.3d 275, 282 (3d Cir. 2001).

Ashton brings a defamation claim against Defendants Knepp and Gingerich as a result of their "false, malicious, and defamatory statements" which caused Ashton to suffer "substantial emotional distress, mental anguish, and pain and suffering." (Doc. 73, ¶ 239). Specifically, Ashton asserts that Knepp made "several un-kind, offhanded remarks to the other WCCC Staff members" such as "[t]he fat girl helped him get this car"; Ashton "shouldn't have a car like this after doing seven years in prison"; and Knepp said to Gingerich that plaintiff "spent all the loan money on drugs and gambling." Ashton asserts that these comments were offensive and diminishing in nature. (Doc. 73, ¶ 77). While these comments do appear to be insulting, they do not rise to the level of defamatory conduct under Pennsylvania law. These comments were made between two officers, and there is no indication that these remarks would harm Ashton's reputation in any way. Rather, these "offhanded remarks" would be properly understood by a reasonable listener to amount to nothing more than mere insult. Thus, Plaintiff has not alleged facts to support a defamation claim against Defendants Knepp and Gingerich and it is recommended that this claim be dismissed with prejudice.

## III.  RECOMMENDATION

Based on the foregoing, it is recommended that the Court grant in part and deny in part Defendants' Motions to Dismiss. Specifically, it is recommended:

1. That the Court **GRANT** Defendants' Motions to Dismiss with prejudice regarding Plaintiff's

    a. Claims against Knepp, Gingerich, Jacobson, Reedy, Tritt, Sommers, and Pepperling in their official capacities;

b. Claims against the Department of Corrections, the Bureau of Community Corrections, Wernersville Community Corrections Center, and Luzerne County Probation Services as barred by the Eleventh Amendment;

c. Conspiracy claims against all Defendants;

d. Claims against Tritt, Sommers, Gingerich, and Jacobson in their supervisory roles;

e. Fourth Amendment claims;

f. Procedural Due Process claim;

g. Civil Rights Act claim;

h. Claims against the Department of Corrections, the Bureau of Community Corrections, Wernersville Community Corrections Center, Luzerne County Probations Services, Tritt, Sommers, Gingerich, and Jacobson for municipal liability, specifically claims for unconstitutional polices or customs, failure to train and supervise, and inadequate hiring practices;

i. Fifth Amendment claims;

j. Credit for Time claim against the Department of Corrections;

k. State law claim based on the Anti-Discrimination Clause of the Pennsylvania Constitution;

l. Intentional Infliction of Emotional Distress claim; and

m. Defamation Claim.

2. That the Court **GRANT** Defendants' Motions to Dismiss without prejudice, and allow Plaintiff thirty (30) days leave to amend the following claims:

a. Americans with Disabilities Act and Rehabilitation Act claims against Knepp, Gingerich, and Jacobson; and

b. State law claim based on the Pennsylvania Human Relations Act.

3. That the Court **DENY** Defendants' Motions to Dismiss regarding Plaintiff's:

a. First Amendment Retaliation claim against Knepp and Gingerich;

b. Higher Education Act claim;

33

    c. Equal Protection claim against Knepp, Gingerich, Reedy, and Jacobson; and

    d. Eighth Amendment claim against Knepp, Gingerich, and Reedy.


**BY THE COURT:**

**Dated: December 30, 2013**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT ASHTON,

        Plaintiff

    v.

CHARLES T. KNEPP, et al.,

        Defendants

CIVIL ACTION NO. 1:12-CV-01920

(KANE, J.)
(MEHALCHICK, M.J.)

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **December 30, 2013**.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: December 30, 2013

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**