## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT ASHTON,

                Plaintiff,

     v.

CORRECTIONS COUNSELOR
CHARLES T KNEPP, et al.,

                Defendants.

CIVIL ACTION NO. 1:12-CV-01920

(KANE, J.)
(MEHALCHICK, M.J.)

### REPORT AND RECOMMENDATION

The above-captioned civil rights action was initiated by the filing of a complaint in this matter by *pro se* Plaintiff Robert Ashton ("Ashton") on September 26, 2012. (Doc. 1). This action revolves around alleged instances of misconduct that occurred while Plaintiff was serving a sentence in prerelease capacity at the Wernersville Community Corrections Center ("WCCC").

## I.   BACKGROUND

Plaintiff filed this complaint on September 26, 2012 against eleven named Defendants , asserting a litany of constitutional violations he allegedly suffered while a resident at the WCCC. (Doc. 1). The complaint was served on October 16, 2012. Following service of Plaintiff's complaint, Defendants filed a number of motions to dismiss. (*See* Doc. 42; Doc. 46; Doc. 49). On December 18, 2012, Plaintiff filed a motion to amend his complaint, in which he sought leave to strike Defendants Wernersville, Pennsylvania and South Heidleburg Township from his pleading. The Court granted this request in an Order dated January 28, 2013. (Doc. 62).

On February 22, 2013, while Defendants' motions to dismiss Plaintiff's complaint were pending, Plaintiff filed a motion to amend his complaint. (Doc. 69). On February 26, 2013, the

Court granted Plaintiff's motion to amend and denied the pending motions to dismiss as moot. (Doc. 72). Plaintiff's amended complaint is the currently operative complaint in this matter. (Doc. 73). The Defendants named in the amended complaint are Corrections Counselor II Charles T. Knepp, Center Director Michael Gingerich, Campus/Region II Director Traci Jacobson, Accounting Assistant Kathy Jo Reedy, Wernersville Community Corrections Center, Director Brenda Tritt, Director Jack Sommers, the Pennsylvania Department of Corrections ("DOC"), and the Bureau of Community Corrections. (Doc. 73).

In his amended complaint, Plaintiff asserts twenty six counts against these Defendants, including violations of the First, Fourth, Fifth, Eighth and Fourteenth Amendments, claims brought pursuant to the Americans with Disabilities Act and Rehabilitation Act, a Higher Education Law claim, state law claims pursuant to the Pennsylvania Constitution and the Pennsylvania Human Relations Act, other state tort claims, and general conspiracy claims brought under federal and state law.

In sum, Ashton's complaint concerns three sets of factual allegations. First, Ashton makes a series of allegations concern the myriad decisions made by Defendant Knepp, his counselor at WCCC, in connection with various requests he made. Specifically, Ashton alleges as follows: On June 28, 2010, Ashton was approved for DOC pre-release and was assigned to WCCC, which operates under the DOC and Bureau policies. While at WCCC he was working and attending Reading Area Community College ("RACC"). His counselor at WCCC was Defendant Knepp. Ashton alleges that Knepp denied him the opportunity to attend off-site alcoholics support group meetings, denied him sign-in times amenable to his education and work schedule, and denied him permission to store a laptop computer in his vehicle. He further complains that he was assigned chores despite being enrolled in RACC and working part time.

He also complains that it was expected that he procure employment but once he did, he was informed that the job he found was unacceptable because it paid in cash. Ashton alleges that on September 16, 2010, he confronted Defendant Gingerich to discuss the discriminatory treatment he was receiving by Defendant Knepp. On September 19, 2010, he sent Defendant Gingerich a formal written request regarding the discriminatory treatment. On October 8, 2010, he was subjected to a search of his car. As a result of that search, Defendant Knepp confiscated a cell phone belonging to Ashton's fiancé and allegedly made insulting remarks to him. Ashton alleges that Defendants also searched the phone and gained personal information about Ashton's bank account, which he held jointly with his fiancé.

The second series of allegations concern actions of Defendant Reedy in allegedly deducting money from Plaintiff's inmate account and forwarding it to the Luzerne Probation Services for payment of fines and court costs and later forwarding the money from Ashton's account (which allegedly includes the money he received from a Federal Stafford Loan to pay for his educational pursuits) to the sentencing court after Ashton escaped from WCCC. Specifically, Ashton alleges he secured a federal loan to finance his classes at RACC. He alleges that when his phone was searched, Defendants learned that his refund money received from RACC was deposited in his joint bank account, and not his inmate account, which was contrary to an agreement he signed. On October 13, 2010, Ashton gave Defendant Reedy a deposit form in the amount of $3,715. 45, which indicated that his refund money was deposited in his inmate account. On November 25, 2010, Ashton escaped from WCCC. On November 26, 2010, Ashton's inmate account was depleted and forwarded to Luzerne County.

Finally, the third set of allegations relates to the re-computation of Ashton's overall sentence after he pleaded guilty to escaping from WCCC.

- 3 -

II.   **PROCEDURAL HISTORY**

On March 8, 2013, Defendants Charles T. Knepp, Traci Jacobson, Michael Gingerich, Kathy Jo Reedy, Wernersville Community Corrections Center, Brenda Tritt, Jack Sommers and the Pennsylvania Department of Corrections filed motion to dismiss. (Doc. 77). On March 13, 2013, Luzerne County Probation Services, and Tom Pepperling filed motion to dismiss. (Doc. 81). The Court entered a Report and Recommendation on December 30, 2013 (Doc. 119, *adopted in full on August 5, 2014* (Doc. 134))), wherein it recommended granting in part and denying in part Defendant's motions to dismiss, dismissing all claims with the exception of allowing Plaintiff thirty (30) days leave to amend his Americans with Disabilities Act and Rehabilitation Act claims against Knepp, Gingerich, and Jacobson, and his state law claim based on the Pennsylvania Human Relations Act. However, it appears that Plaintiff absconded from parole shortly after the Report and Recommendation was entered and therefore, never amended his complaint. Thus, these claims have been dismissed. The Report and Recommendation allowed the following claims to proceed without amendment: Plaintiff's First Amendment Retaliation claim against Knepp and Gingerich; his Higher Education Act claim; his Equal Protection claim against Knepp, Gingerich, Reedy, and Jacobson; and his Eighth Amendment claim against Knepp, Gingerich, and Reedy.

Currently pending before the Court is Defendants' motion for summary judgment (Doc. 169), filed on December 15, 2015. Plaintiff filed a motion for a ninety-day extension of time to file a brief in opposition, which the Court construed the motion as both a motion for an extension of time to file a brief in opposition and a Rule 56(d) motion seeking deferral of the deadline for Plaintiff's opposition until such time as additional discovery is obtained. Court granted Plaintiff a thirty day extension to file a brief in opposition, but further indicated that the

- 4 -

denial was without prejudice to Plaintiff filling a properly supported Rule 56(d) motion. (Doc. 178). Plaintiff subsequently appealed the Court's Order and then sought to stay the case on February 1, 2016, pending disposition of Plaintiff's appeal of the Court's non-dispositive Order granting Plaintiff a thirty-day extension of time to file a brief in opposition. The Court granted the motion to stay on February 2, 2016. (Doc. 185). On June 29, 2016, Plaintiff filed a Rule 56(d) motion, which was denied by the Court on July 1, 2016. (Doc. 191; Doc. 192). However, Plaintiff's brief in support of his Rule 56(d) motion was received after the Court's Order denying his Rule 56(d) motion. The Court considered the arguments presented therein and on July 7, 2016, entered an Order directing Defendants to produce a copy of the WCCC Residential Handbook effective in 2010 before July 18, 2016. (Doc. 195). In that Order, the Court directed Plaintiff to file his brief in opposition to Defendants' motion for summary judgment no later than July 27, 2016. (Doc. 195).

Instead of filing a brief in opposition within that time frame, however, Plaintiff filed a notice to the Court that he did not receive the applicable WCCC Handbook from Defendants. (Doc. 198). In that notice, Plaintiff attached e-mail correspondence between himself and Defendants' counsel which indicated that he did, in fact, receive the correct WCCC Residential Handbook. Thus, the Court entered an Order dated July 27, 2016, acknowledging its receipt of Plaintiff's notice and informing Plaintiff that Defendants had, in fact, complied with the Court's Order directing Defendants to produce the WCCC handbook. (Doc. 200). On August 5, 2016, Plaintiff filed a motion to stay the case as he pursued an appeal of the Court's July 27, 2016 Order. The Court denied Plaintiff's motion to stay and reminded Plaintiff that the brief in opposition deadline was set for August 15, 2016. (Doc. 203.) To date, Plaintiff has not filed a

brief in opposition to Defendants' motion for summary judgment. Thus, the Court will deem this motion unopposed.[1]

## III.   STANDARD OF REVIEW

To prevail on a motion for summary judgment, the moving party must show that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury . . . could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988). A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[1] Pursuant to Rule 7.6 of the Local Rules of Court for the Middle District of Pennsylvania, a party who fails to submit a brief opposing a motion is deemed not to oppose the motion. The Court of Appeals for the Third Circuit has held that dismissal of a case for failure to comply with a local rule is a "drastic sanction" which should, with few exceptions, follow a merits analysis. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991); *see also Shuey v. Schwab*, 350 Fed.Appx. 630, 632-33 (3d Cir. 2009) (not precedential). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Further, a plaintiff's failure to respond "is not alone a sufficient basis for the entry of a summary judgment." *Anchorage Assocs. v. V. I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). The Court must still determine, even for an unopposed summary judgment motion, whether the motion for summary judgment has been properly made and supported and whether granting summary judgment is appropriate. *Anchorage Assocs.*, 922 F.2d at 175.

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In making this determination, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**IV.   DISCUSSION**

As outlined in more detail above, the claims remaining in this case are Plaintiff's First Amendment Retaliation claim against Defendants Knepp and Gingerich; his Higher Education Act claim; his Equal Protection claim against Defendants Knepp, Gingerich, Reedy, and Jacobson; and his Eighth Amendment claim against Defendants Knepp, Gingerich, and Reedy. Defendants seek summary judgment on each of these claims.

A.   FIRST AMENDMENT RETALIATION

Ashton asserts that Defendants Knepp and Gingerich engaged in a "campaign of harassment" geared towards retaliating against Ashton for filing a report against Defendant Knepp to Defendant Gingerich. To prove retaliation, a plaintiff must establish the following elements: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v.*

*Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006); *see also Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001); *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000). To amount to retaliation, the conduct must be "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (quotation marks and citation omitted). In this case, there is no dispute that filing report against Defendant Knepp is a constitutionally protected activity. On the second factor, the parties dispute whether the search of the car of a prelease inmate, resulting in the confiscation of a cell phone, is an adverse action. However, because the Court finds that there is no evidence in support a finding of causation, the third factor, the Court will not examine the issue of whether or not the search and confiscation was an adverse action, but will instead turn to the third factor, whether a causal link exists between the constitutionally protected conduct and the retaliatory action.

To evaluate the existence of a causal link between the constitutionally protected conduct and adverse action, the Third Circuit has adopted a burden-shifting analysis: the prisoner-plaintiff bears the initial burden of proving that his constitutionally protected conduct was a substantial or motivating factor in the decision to take adverse action against him; once a prisoner has made his *prima facie* case, the burden then shifts to the defendant to prove by a preponderance of the evidence that he would have taken the same adverse action even in the absence of the protected activity, for reasons reasonably related to a penological interest. *Carter v. McGrady*, 292 F.3d 152, 157–58 (3d Cir. 2002); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).Overcoming that initial burden of showing the requisite causal connection between the constitutionally protected conduct and the adverse action requires that a plaintiff prove either "(1) an unusually suggestive temporal proximity between the protected activity and the

allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link . . . ." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (*citing Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503–04 (3d Cir. 1997); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920–21 (3d Cir. 1997)). In the absence of such proof, however, the plaintiff may show that the "evidence gleaned from the record as a whole" provides an inference of causation. *DeFlaminis*, 480 F.3d at 267 (*citing Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)). "Courts in civil rights cases have frequently rebuffed speculative efforts to infer causation from temporal proximity when a span of weeks, months or years separated the plaintiff's constitutionally protected conduct from the defendants' alleged acts of retaliation." *Victor v. Huber*, No. 3:12-CV-282, 2012 WL 2564892, at *9 (M.D. Pa. Feb. 28, 2012) (*citing See Killen v. N.W. Human Servs.*, Inc., No. 06–4100, 2007 WL 2684541, at *8 (E.D. Pa. Sept. 7, 2007) (holding that temporal proximity of seventeen days was insufficient to establish causation); *Farrell*, 206 F.3d at 279 n.6 (suggesting that temporal proximity of seven weeks would be insufficient to establish causation); *Smith v. ABF Freight Sys., Inc.*, No. 04–2231, 2007 WL 3231969, at *11 (M.D. Pa. Oct. 29, 2007) (holding that temporal proximity of one and one-half months was insufficient to establish causation); *Mar v. City of McKeesport*, No. 05–19, 2007 WL 2769718, at *4 (W.D. Pa. Sept. 20, 2007) (holding that temporal proximity of three months was insufficient to establish causation); *Fischer v. Transue*, No. 04–2756, 2008 WL 3981521, *10 (M.D. Pa. Aug. 22, 2008) (holding that temporal proximity of three weeks was insufficient to establish causation)). The Court is not limited to a determination of whether the temporal proximity between the protected activity and the alleged retaliatory act creates an inference of a causal connection to the exclusion of all other facts or circumstances potentially probative of

causation. *Farrell*, 206 F.3d at 279; *Rauser*, 241 F.3d at 334 (noting that "suggestive temporal proximity" is relevant but not determinative of causation).

Ashton alleges the following retaliatory actions that occurred as a result of his filing a report against Defendant Knepp on September 16, 2010: the October 8, 2010 car search by Knepp; the October 8, 2010 misconduct issued by Knepp; being placed on center restriction on October 13, 2010 by Gingerich; being told on he could not go to Ms. Merkham's on October 16, 2010 Plaintiff told verbally he could not go to Ms. Merkham's by Knepp; being told by Knepp on October 27, 2010 that he must wait 30 days after misconduct for home furlough plan application to be processed; being subjected to modified programs as to food, library sign outs, and location of AA meetings by Knepp; Gingrich telling Plaintiff on November 2, 2010, that he must wait 30 days from time of misconduct for home furlough plan application to be processed; being denied $200.00 withdrawal request from inmate account for gas and car repairs by Knepp on November 8, 2010; Knepp denying Plaintiff $200.00 withdrawal requests from inmate account for clothing on November 10, 2010; Knepp not permitting Plaintiff to amend the sign out form which had never been received; and Knepp denying Plaintiff Thanksgiving furlough.

As Defendants correctly note, if the car search was not retaliatory, then the other events could not be retaliatory, as they were merely the natural consequences that flowed from a rule violation and resulting center restriction. The record here contains no evidence of causation with respect to the car search. There is no evidence of any temporal proximity between the filing of complaints against Defendant Knepp and the search of the car, which occurred more than three weeks after the filing of the complaints. Furthermore, Defendant Knepp has submitted a declaration under oath that any WCCC Resident with a car was subject to having their car searched by staff at any time and that the search was indeed a random one, and this

declaration is undisputed in the record. For these reasons, the Court finds that the record does not raise an inference of causation. (See Doc. 171, at 17-21). As such, it is recommended that the Court grant summary judgment to Defendants on Plaintiff's First Amendment retaliation claim.

B. EIGHT AMENDMENT CRUEL AND UNUSUAL PUNISHMENT CLAIM

Plaintiff alleges that Defendants Knepp, Gingerich, and Reedy violated the Eighth Amendment by: (1) refusing to allow him to sign out to purchase food; (2) denying his expenses for gas, car repairs and clothing; (3) denying his request to attend addiction meetings offsite; (4) denying a single sign out for school and work; (5) denying Thanksgiving furlough; and (6) attaching his inmate account after his escape.

To prevail on an Eighth Amendment conditions of confinement claim, Plaintiff must prove he or she suffered a deprivation of 'the minimal civilized measures of life's necessities,'" such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Kost v. Kozakiewicz*, 1 F.3d 176, 188 (3d Cir. 1993) (*quoting Wilson v. Seiter*, 501 U.S. 294, 298, 303–04 (1991)). To satisfy the former, subjective component, of a conditions of confinement claim, a plaintiff must allege that the state actor acted with "deliberate indifference," a state of mind equivalent to gross negligence or reckless disregard of a known risk of harm. *See Farmer v. Brennan*, 511 U.S. 825, 836 & n.4 (1994). To satisfy the latter, objective component, a plaintiff must allege conditions that, either alone or in combination, deprive him or her of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, or personal safety. *See Rhodes v. Chapman*, 452 U.S. 337, 347–48 (1981); *Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992). This component requires that the deprivation

sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Plaintiff has not alleged any deprivation that rises to the level of Eighth Amendment violation. The record contains no evidence that he was denied the ***minimal*** civilized measure of life's necessities. *See, e.g., Williams v. Delo*, 49 F.3d 442, 444–47 (8th Cir. 1995) (finding no Eighth Amendment violation where prisoner was placed in strip cell without clothes, water in cell was turned off and mattress removed, and prisoner's bedding, clothing, legal mail, and hygienic supplies were withheld); *see Harris v. Fleming*, 839 F.2d 1232 (7th Cir. 1988) (holding that denial of toilet paper for five days, denial of soap, toothbrush, and toothpaste for ten days, and denial of exercise for twenty-eight days did not constitute cruel and unusual punishment); *see Veteto v. Miller*, 829 F. Supp. 1486, 1496 (M.D. Pa. 1992) (finding no Eighth Amendment violation where the plaintiff alleged that "he was denied meals, clean clothes, showers and recreation periods, but not that he went hungry or lived in an unsanitary, wholly sedentary environment").

As for the allegation that Plaintiff was denied access to food, the uncontroverted evidence in the record reveals that Defendant Knepp denied Plaintiff's request to make a trip to Redner's Market on September 22, 2010 because Plaintiff was only permitted two store visits per week as stipulated in the handbook. That week, Plaintiff had already been approved for two off site trips. Plaintiff has not alleged, and the record contains no evidence that Plaintiff was deprived of food or was starving, but rather, only that Plaintiff was denied the privilege of attending the grocery store for the third time that week. As for Plaintiff's allegations that he was denied gas, car repairs and clothing, deprivations of gas and car repairs do not constitute a denial of life's necessities. As for Plaintiff's allegations regarding clothing, no allegations or

- 12 -

evidence in the record establish that Plaintiff lacked adequate clothing or was deprived of clothing, only that he was denied additional clothing. As for the remainder of the allegations, none of the circumstances constitute a denial of the minimal life necessities such as food, water, clothing, sanitation, medical care of personal safety. *Gholson v. Murry*, 953 F. Supp. 709, 719 (E.D. Va. 1997) ("When defendants denied plaintiffs access to work opportunities and certain educational programs, this was clearly not a "sufficiently serious" deprivation of 'the minimal civilized measure of life's necessities.')

For these reasons, it is recommended that summary judgment be granted in favor of Defendants on Plaintiff's Eight Amendment claims.

### C. Equal Protection Claim

A plaintiff who alleges an equal protection violation has the burden of proving the existence of purposeful discrimination that had a discriminatory effect on him. *See McCleskey v. Kemp*, 481 U.S. 279, 292 (1987). Accordingly, to state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that: (1) he was a member of a protected class; (2) he was treated differently from similarly situated persons outside of his protected class; and (3) the discrimination was purposeful or intentional rather than incidental. *Heim v. Dauphin County Prison*, 2011 WL 3875998, at *6 (M.D. Pa. Aug. 31, 2011). Additionally, the Third Circuit has recognized "class of one" claims where a plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The Court has previously construed Defendant's equal protection claim as a "class of one" claim, rather than a "protected class" theory. (Doc. 119, at 24). If a litigant does not claim

membership in a protected class, he or she must prove arbitrary and intentional discrimination in order to prevail on an equal protection claim. Specifically, the plaintiff must demonstrate that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). In this case, there is no evidence in the record from which an inference could be drawn that Plaintiff was treated differently from other similarly situated pre-release inmates. Moreover, Defendants have proffered justification for the treatment Plaintiff received. Specifically, as to Plaintiff's claim that he was denied payment in cash for his work, the undisputed evidence in the record establishes that the DOC does not permit this kind of payment method for full time work, because it creates a greater opportunity for an inmate to obtain money without a paper trail. Further, Plaintiff has adduced no evidence to show that any other prerelease inmates were routinely paid in cash and at below minimum wage for their jobs. As to Plaintiffs allegation that he was denied his Thanksgiving furlough, the undisputed evidence in the record establishes that Defendant Knepp denied the furlough request because Plaintiff had received a misconduct and violated policy by depositing his Pell grant refund into an account other than an inmate account. Again, Plaintiff has not put forth any evidence that he was treated any differently than any others similarly situated. As to Plaintiff's claim that he was required to do community chores, there is no evidence in the record that this requirement was dissimilar to that of any other inmate. Finally, as to Plaintiff's claim that he was denied a single sign out for school and work, there is no evidence in the record to demonstrate that he was treated differently from any other inmate in this regard. The DOC uniformly applies a policy requiring inmates to sign out before attending school and work.

As the undisputed record fails to demonstrate that Plaintiff was treated any differently from any other similarly situated inmate, it is recommended that Defendants be granted summary judgment on Plaintiff's claim equal protection claim.

### D. HIGHER EDUCATION ACT CLAIM

Plaintiff contends that Defendants wrongfully appropriated his Pell grant refund after he absconded from WCCC. Defendants assert that Plaintiff waived his right to that money when he escaped, and by doing so knowingly forfeited any right to the money in his account. Plaintiff asserts that the Higher Education Act, 20 U.S.C. § 1095a(d) preempts Act 84, 42 Pa. C.S. § 9728(b)(5), which authorizes the DOC to make monetary deductions from inmate personal accounts for the purpose of collecting restitution or any other court-ordered obligations. Defendants assert that there is no preemption here, or alternatively, that Defendants are entitled to qualified immunity on this claim. For the reasons that follow, it is recommended that summary judgment be granted in favor of Defendants on this claim.

#### 1. Qualified Immunity

Defendants assert that Plaintiff's claims are barred by the doctrine of qualified immunity. The doctrine of qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity provides not merely a "defense to liability," but rather "immunity from suit." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). Officials performing "discretionary functions" are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." *Pearson*, 555 U.S. at

- 15 -

231. If an official reasonably believes his conduct to be lawful, he is protected by qualified immunity, which affords "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 254 (3d Cir.2010). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Acierno v. Cloutier*, 40 F.3d 597, 616 (3d Cir.1994). A qualified immunity determination involves two distinct inquiries. The first inquiry evaluates whether the defendant violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001). The second inquiry assesses whether the right in question was "clearly established" at the time the defendant acted. *Pearson*, 555 U.S. at 231–32; *Saucier*, 533 U.S. at 201–02. A right is "clearly established" if a reasonable actor under the circumstances would have known that his or her conduct impinged upon constitutional mandates. *Broadwater v. Fow*, 945 F.Supp.2d 574, 585 (M.D.Pa.2013).

In this case, the law is not clearly established. As this Court observed in ruling on Defendants' motion to dismiss earlier in this case, the Third Circuit has yet to determine whether prison officials can attach or seize funds in an inmate's account traceable to a grant for higher education under the Higher Education Act. As Defendants correctly aver in their brief in support of summary judgment, there is a scarcity of preemption-related case law under § 1905a,

and those decisions that do exist pertain to wage attachment under subsection (a), and do not pertain to the issue in this case.[2] For these reasons, the Court finds that it is not clearly established whether prison officials may attach or seize funds in an inmate's account traceable to a grant for higher education under the Higher Education Act. Accordingly, it is recommended that the Defendants be granted qualified immunity on Plaintiff's Higher Education Act claim, and judgment be entered in their favor.

## 2. Preemption

Alternatively, the Court finds that 42 Pa. C.S. § 9728(b)(5) is not preempted by the Higher Education Act, 20 U.S.C. § 1095a(d), and as such, Defendants are entitled to summary judgment on Plaintiff's Higher Education Act claim. The pertinent section of the Higher Education Act, § 1095a(d) prohibits the garnishment or attachment of grant monies for higher education made pursuant to the Higher Education Act. 42 Pa. C.S. § 9728(b)(5) states:

> The county correctional facility to which the offender has been sentenced to the Department of Corrections shall be authorized to make monetary deductions from inmate personal accounts for the purpose of collecting restitution or any other court-ordered obligation. The Department of Corrections shall develop guidelines relating to its responsibilities under this paragraph.

The Third Circuit recognizes three categories of preemption: 1) express preemption that is stated in the statute's language or implicit in its structure and purpose; 2) conflict preemption that arises when a state law makes it impossible for a private party to comply with both state and federal requirements; and 3) field preemption that occurs when a field is reserved for federal

---

[2] Those cases generally hold that third party debt collectors are permitted to garnish wages under state consumer protection law. *See e.g., Smith v. Collection Technologies, Inc.* 2016 WL 1169529 (S.D.W.Va. March 22, 2016); *Peete-Bey v. Educ. Credit Mgmt. Corp.*, 131 F. Supp. 3d 422 (D. Md. 2015); *Wheeler v. Premiere Credit of N. Am., LLC*, 80 F. Supp. 3d 1108, 1115 (S.D. Cal. 2015); *Cliff v. Payco General American Credits, Inc.*, 363 F.3d 1113, (11th Cir. 2004).

regulation without room for state regulation and congressional intent is clear and manifest. *Ramos-Becerra v. Hatfield*, No. 1:14-CV-0917, 2016 WL 4127387, at *4 (M.D. Pa. Aug. 3, 2016); *Elassaad v. Indep. Air, Inc.*, 613 F.3d 119, 126 (3d Cir. 2010) (citations omitted). There is no "express" preemption in this case, because Congress did not explicitly manifest an intention to preempt state law in the language of the statute. "Field" preemption is not applicable here because the federal regulation in the field is not so pervasive that it can reasonably be inferred that congress left no room for the states to supplement it, especially in a scenario such as this where the collection of fines, fees, costs, and restitution for state criminal matters is a field traditionally regulated by the state.

As such, the state law will only be preempted here if it actually conflicts with federal law. Conflict preemption exists where either (1) the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" or (2) it is "impossible for a ... party to comply with both state and federal law." *Williams v. Standard Fire Ins. Co.*, 892 F. Supp. 2d 615, 622 (M.D. Pa. 2012); *quoting Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 899, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000). The Court finds Defendant's argument persuasive, that there is no conflict between the two statutes at play in this case. While § 1095a(d) prohibits ***garnishment or attachment*** of the monies, those are different methods of collection than the collection of ***restitution*** by the Department of Corrections, as authorized in Act 84, 42 Pa. C.S. § 9728(b)(5). In this case, Plaintiff failed to follow the pre-release rules and return to WCCC after his work shift. Consequently, and pursuant to his agreement to abide by the WCCC rules, he was divested of his property, including the funds in question. Conversely, the actions prohibited by §1095a(d), garnishment or attachment, require court orders to effectuate, and were simply not the methods of collection of the funds in this case.

- 18 -

As such, it is recommended that the Court grant Defendants' motion for summary judgment on Plaintiff's Higher Education claim.

**V.     RECOMMENDATION**

Based on the foregoing, it is recommended that Defendants' motion for summary judgment (Doc. 169) be **GRANTED**, and that all claims the remaining Defendants be dismissed with prejudice, and the Clerk of Court **CLOSE** this case.

**Dated: September 13, 2016**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

- 19 -

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT ASHTON,

           Plaintiff,

   v.

CORRECTIONS COUNSELOR
CHARLES T KNEPP, et al.,

           Defendants.

CIVIL ACTION NO. 1:12-CV-01920

(KANE, J.)
(MEHALCHICK, M.J.)

### NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **September 13, 2016**.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: **September 13, 2016**

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**